Opinion issued March 11, 2010














     

In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00258-CV




OLGA (CHAPA) VILLARREAL AND ISREAL CHAPA, Appellants

v.

WELLS FARGO BROKERAGE SERVICES, LLC, WELLS FARGO
INVESTMENTS, LLC, AND CHARLES J. LEWIS, JR., Appellees




On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2006–51424A




O P I N I O N

          In this appeal, plaintiffs/appellants, Olga (Chapa) Villarreal and Isreal Chapa,
present three issues challenging the trial court’s order granting summary judgment in
favor of defendants/appellees, Wells Fargo Brokerage Services, LLC, Wells Fargo
Investments, LLC (collectively, “Wells Fargo”), and Charles J. Lewis, Jr.
          We affirm in part and reverse in part.
Factual & Procedural Background
          Pete David Chapa (“Mr. Chapa”) developed silicosis after working at a glass
plant for 20 years. Mr. Chapa filed suit based on his silicosis injuries and obtained
a settlement for $650,000. The settlement funded shortly after his death in February
1997. As directed by Mr. Chapa, the settlement funds were placed in a testamentary
trust for the benefit of his two adult children, Olga (Chapa) Villarreal and Israel
Chapa (collectively, “the Chapas”). Mr. Chapa named a family friend, Ramiro Pena,
Jr. (“Pena”), to act as trustee. 
          Pena opened a non-discretionary brokerage account with investment broker
Charles J. Lewis, Jr. (“Lewis”) at Wells Fargo. Pena deposited $634,000 into the
account on May 19, 1997. In August 1997, Pena began margin trading with the
account’s funds. Pena signed a margin trading agreement with Wells Fargo. The
agreement explained that margin trading allowed Pena to borrow money from Wells
Fargo and that such loans were secured by the brokerage account’s assets.
          In late 1999 and early 2000, Pena authorized Wells Fargo to invest the
account’s funds in technology mutual funds. From December 31, 1999 to January 31,
2001, the value of the brokerage account went from $653,214.87 to $361,538.98. 
          Pena closed the brokerage account with Wells Fargo on November 1, 2001. 
Pena then invested the funds with Jubilee Investments. 
          On June 21, 2005, Israel Chapa’s attorney sent a letter to Pena regarding the
trust’s assets. The letter indicated that the beneficiaries had never received an
accounting of the trust’s funds, but had received only “a few general comments about
some money being lost in investments.” The letter also stated that Israel had stopped
receiving monthly payments from the trust and had been told by Pena that the money
was “tied up” in Jubilee Investments. Israel’s counsel demanded that Pena provide
an accounting of the trust’s assets since its creation. Pena provided information to the
beneficiaries, but not until six months after receiving Israel’s request. 
          The Chapas filed suit against Pena, Wells Fargo, and the principals of Jubilee
Investments on August 17, 2006. The Chapas alleged that Pena breached his
fiduciary duty as trustee by failing to properly invest, manage, and preserve the trust’s
assets. The Chapas also alleged that Pena breached his fiduciary duty by failing to
“institute[] legal action” against Wells Fargo and by failing to fully disclose “material
facts” to the Chapas regarding the losses sustained by the trust. 
          The Chapas also alleged that Wells Fargo owed a fiduciary duty to Pena in his
capacity as trustee of the testamentary trust and, by extension, to them as beneficiaries
of the trust. The Chapas asserted that Wells Fargo, through the acts of its employee,
investment broker Charles Lewis, had breached that duty by advising Pena to make
“unsuitable” high-risk investments with the trust’s funds, despite Pena’s request that
the funds be placed in low-risk investments. Specifically, the Chapas identified the
technology mutual funds and the margin trading as “unsuitable” investments for the
trust’s assets. The Chapas claimed that, when Pena had questioned Lewis about the
suitability of these investments, Lewis had continually assured him that they were
suitable investments for the trust’s funds. 
          Besides breach of fiduciary duty, the Chapas also sued Wells Fargo for breach
of the duty of good faith and fair dealing, negligent misrepresentation, negligence,
and violations of the Deceptive Trade Practices Act and the Texas Securities Act. In
addition, the Chapas set forth a cause of action against Wells Fargo for assisting Pena
in breaching his fiduciary duty to the Chapas. 
          In their petition, the Chapas further asserted that Wells Fargo was vicariously
liable for Lewis’s acts based on respondeat superior and based on a “negligent failure
to supervise.” The Chapas also alleged that the discovery rule and “fraudulent
concealment” had served to toll the statute of limitations on their claims.
          After the Chapas filed their third amended petition, Pena filed a motion to
designate Lewis as a “responsible third party” pursuant to Civil Practices and
Remedies Code section 33.004. The Chapas also filed a motion to join Lewis as a
defendant based on section 33.004(e). After the trial court granted the motion to join,
the Chapas filed their fourth amended petition, adding Lewis as a defendant. The
Chapas asserted the same causes action against Lewis as they had previously asserted
against Wells Fargo. The Chapas also added a cause of action for fraud against Wells
Fargo and Lewis.
          Wells Fargo and Lewis filed a “traditional” rule 166a(c) motion for summary
judgment against the Chapas. The summary judgment movants asserted, “as a
threshold matter,” that they did not owe an independent fiduciary duty to the Chapas
because Pena was the account holder, not the Chapas. 
          Wells Fargo and Lewis asserted the affirmative defense of limitations as the
primary basis for summary judgment. They argued that the applicable statutes of
limitation had expired on all of the Chapas’ causes of action. Wells Fargo and Lewis
contended that the discovery rule and fraudulent concealment did not operate to toll
the various limitations periods. 
          The summary judgment movants asserted that, because the Chapas’ alleged
injuries were not “inherently undiscoverable,” the discovery rule did not apply to toll
the statutes of limitation. Wells Fargo and Lewis acknowledged Pena’s deposition
testimony in which he testified that he was unaware that investing in technology
mutual funds or margin trading were not “suitable” investments for the trust’s assets
until he consulted an attorney in 2005 after receiving the Chapas’ demand letter
requesting an accounting for the trust. Wells Fargo and Lewis averred that Pena’s
claim was “misplaced.” The movants asserted, “[A]ny injury or wrongdoing caused
by Wells Fargo or Lewis was clearly evident on the face of the bank statements,
which showed all activity in the margin account, the funds in which the account was
invested, and gains and losses to the account.” 
          To support this assertion, Wells Fargo and Lewis offered, as evidence, monthly
and quarterly account statements received by Pena from December 1999 through
January 2001. The statements show a noticeable decline in the brokerage account’s
funds. They also offered a document signed by Pena on December 4, 2000, which
directed Wells Fargo to transfer funds from Internet and technology mutual funds into
a “unit investment trust” that had “greater diversification and less overall volatility.” 
The movants pointed to the monthly account statement following this transaction,
which reflected that proceeds from this sale had been used to pay monies owed on the
margin account balance. 
          With regard to fraudulent concealment, Wells Fargo and Lewis argued that
nothing had been concealed from Pena. They again pointed to the monthly and
quarterly statements received by Pena, which showed the decline in the brokerage
account’s value. 
          Wells Fargo and Lewis argued that “any claims Pena may have had against
Wells Fargo or Lewis accrued in 2000 when Pena received the monthly statements
and quarterly reports reflecting the losses in technology funds, and certainly no later
than December 4, 2000, when Pena decided to move the brokerage account
investments out of the technology funds into more conservative investments, as a
result of the losses.” Wells Fargo and Lewis concluded that the Chapas’ claims first
asserted in their August 17, 2006 lawsuit were “barred by the statutes of limitations,
as the longest period for any cause of action they allege is four years.”
          The Chapas responded to the motion for summary judgment by first clarifying
that they, as the trust’s beneficiaries, had the legal right to pursue claims on behalf of
the trust which the trustee, Pena, had not pursued. The Chapas also reminded Wells
Fargo and Lewis that they had asserted a claim against both defendants for assisting
Pena in breaching his fiduciary duty as trustee to the Chapas. 
          The Chapas reasserted their claim that the discovery rule tolled the running of
limitations. They argued that “a fiduciary’s misconduct is inherently
undiscoverable.” The Chapas again pointed out that Pena, as trustee, owed them a
fiduciary duty. They asserted, “Pena actively concealed from them the fact and extent
of the injury they suffered through the misfeasance of Lewis.” They continued,
“Plaintiffs have established that they did not learn of their injury until December 2005
when [Pena] finally provided an accounting to the Plaintiffs.” 
          In their summary judgment response, the Chapas also reasserted their claim that
“the various statutes of limitations are tolled due to fraudulent concealment.” They
asserted that they had “produced evidence of a breach of trust/breach of fiduciary
duty by Lewis, Wells Fargo, and [Pena] in picking out investments for the trust that
were prima facie unsuitable.” The Chapas argued that the defendants “knew of the
tort, but used deception to conceal the tort.” They further asserted that “a fiduciary
has an affirmative duty to disclose material facts to the beneficiaries and a breach of
the duty to disclose is tantamount to concealment.” The Chapas averred that Pena
had “failed to provide periodic statements regarding the trusts to Plaintiffs and did not
disclose the losses occasioned by Lewis’s negligence until long after they occurred.” 
They asserted that they had relied on Lewis’s and Pena’s deception to their
detriment.” For these reasons, the Chapas concluded, “[T]he applicable statute of
limitations for the various causes of action were tolled during the time that the losses
were fraudulently concealed.” 
          In their motion for summary judgment, Wells Fargo and Lewis also argued that
Lewis could not properly be joined pursuant to Civil Practice and Remedies Code
section 33.004. The movants acknowledged that section 33.004 provides that a
claimant (plaintiff) is not barred by limitations from seeking to join a responsible
third party within 60 days after that person is designated as a responsible third party. 
          Wells Fargo and Lewis argued that the Chapas should not be permitted to join
Lewis because such joinder was a “fraudulent” attempt to avoid limitations. They
alleged that the Chapas and Pena had conspired to circumvent limitations. 
          Wells Fargo and Lewis also argued that allowing joinder of a defendant against
whom limitations had run before the lawsuit was initially filed would be an “absurd
result” and a “nonsensical” interpretation of the statute. 
          The movants also asserted that section 33.004 did not apply to those causes of
action asserted by the Chapas for which limitations had expired prior to the section’s
effective date. Wells Fargo and Lewis further asserted that section 33.004 did not
apply to certain statutory claims asserted by the Chapas. 
          The Chapas responded that the plain language of section 33.004(e) permitted
their joinder of Lewis and appeared to “contemplate[] the very issue of bringing in
a person who limitations may have run against.” The Chapas further asserted that
Wells Fargo was “liable under the doctrine of respondeat superior to the extent that
[Lewis] is found liable.” 
          Wells Fargo and Lewis filed a reply to the Chapas’ summary judgment
response. In addition to reasserting their initial summary judgment arguments, the
summary judgment movants pointed out that, in their response, the Chapas “do not
dispute that they stand in the shoes of Pena, the trustee, for purposes of their claims.” 
Wells Fargo and Lewis agreed that the Chapas could assert claims based on their
status as beneficiaries of the testamentary trust. But, they disagreed that the Chapas
had “individual claims against Wells Fargo and Lewis.” They asserted, “Plaintiff’s
stand in the trustee’s shoes, and Plaintiffs’ limitations period is computed from the
time the trustee acquired his right to sue.” 
          In their reply, Wells Fargo and Lewis also asserted, “[s]ection 33.004 was
clearly not intended to allow for the collusive joinder of an employee of a previously-named defendant where, as here, the claims against the employee and employer are
one and the same, and the employee was known to the parties all along, and Plaintiffs
made a conscious decision not to sue the employee at the outset.” They further
alleged that, even assuming that Lewis was properly joined, section 33.004 does not
operate to “revive” time-barred claims against Wells Fargo “by virtue of respondeat
superior.” 
          In addition to their traditional motion for summary judgment, Wells Fargo and
Lewis also asserted a no-evidence motion for summary judgment with respect to one
of the Chapas’ causes of action: the Chapas’ claim that Wells Fargo and Lewis had
participated or assisted in Pena’s breach of his fiduciary duty as trustee to the Chapas. 
Specifically, Wells Fargo and Lewis asserted that the Chapas could produce no
evidence that Wells Fargo’s and Lewis’s conduct breached a duty to the Chapas.
          The trial court granted Wells Fargo’s and Lewis’s motion for summary
judgment. In its order, the trial court specified that “all claims asserted by Plaintiffs
[the Chapas] against Wells Fargo and Lewis are barred by the statutes of limitations.” 
The trial court ordered that all of the Chapas’ claims against Wells Fargo and Lewis
“are hereby dismissed with prejudice, and Plaintiffs shall take nothing by reason of
those claims.” The trial court then granted the movants’ motion to sever, making the 
summary judgment order final for purposes of appeal. 
          The Chapas appealed. They present three issues challenging the summary
judgment order. In their first two issues, the Chapas contend that summary judgment
was not proper based on limitations. In their third issue, the Chapas assert that
summary judgment could not be based on the ground that there was no evidence to
support their claim that Wells Fargo and Lewis participated or assisted Pena in
breaching his fiduciary duty.
Summary Judgment Based on Limitations
          In their first and second issues, the Chapas contend that the trial court erred by
granting summary judgment because Wells Fargo and Lewis failed to prove, as a
matter of law, that limitations bar the Chapas’ claims, which they assert as trust
beneficiaries on behalf of the trustee. On appeal, the Chapas contend that a genuine
issue of material fact exists regarding whether the discovery rule deferred the accrual
of these causes of action.



A.      Legal Principles: Traditional Summary Judgment and Limitations
          Because summary judgment is a question of law, a trial court’s summary
judgment decision is reviewed de novo. See Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005). In our review, we take the nonmovant’s competent
evidence as true, indulge every reasonable inference in favor of the nonmovant, and
resolve all doubts in favor of the nonmovant. Diversicare Gen. Partner, Inc. v.
Rubio, 185 S.W.3d 842, 846 (Tex. 2005). To prevail on a “traditional” summary-judgment motion asserted under Rule 166a(c), a movant must prove that there is no
genuine issue as to any material fact and that it is entitled to judgment as a matter of
law. See Tex. R. Civ. P. 166a(c); Little v. Texas Dep’t of Criminal Justice, 148
S.W.3d 374, 381(Tex. 2004). 
          A defendant moving for summary judgment on the affirmative defense of
limitations must conclusively establish the date on which the limitations commenced;
that is, the date on which the cause of action accrued. See Pustejovsky v.
Rapid-American Corp., 35 S.W.3d 643, 646 (Tex. 2000); Zale Corp. v. Rosenbaum,
520 S.W.2d 889, 891 (Tex. 1975). The determination of this date is typically a
question of law. Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 221
(Tex. 2003). 
          As a general rule, a cause of action accrues, and the statute of limitations
begins to run, when facts come into existence that authorize a party to seek a judicial
remedy. Id. (citing Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc., 962
S.W.2d 507, 514 (Tex. 1998)). In most cases, claims accrue “when a wrongful act
causes some legal injury.” Via Net v. TIG Ins. Co., 211 S.W.3d 310, 313 (Tex. 2006). 
This is true even if the fact of injury is not discovered until later, and even if all
resulting damages have not yet occurred. Knott, 128 S.W.3d at 221 (citing S.V. v.
R.V., 933 S.W.2d 1, 4 (Tex. 1996)). 
          The discovery rule defers the accrual of a cause of action until the plaintiff
knows, or by exercising reasonable diligence, should know of the facts giving rise to
the claim. Barker v. Eckman, 213 S.W.3d 306, 311–12 (Tex. 2006). For the
discovery rule to apply, the injury must be inherently undiscoverable and objectively
verifiable. Id. at 312; Via Net, 211 S.W.3d at 313. 
          If the plaintiff pleads the discovery rule as an exception to limitations, the
moving defendant then has the dual burden of proving the date of accrual and of
negating the discovery-rule exception. See Envtl. Procedures, Inc. v. Guidry, 282
S.W.3d 602, 622 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). The
defendant may negate the exception by proving, as a matter of law, that no genuine
issue of material fact exists regarding when the plaintiff discovered, or in the exercise
of reasonable diligence should have discovered, the wrongful act and resulting injury. 
See KPMG Peat Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748
(Tex. 1999); see also Childs v. Haussecker, 974 S.W.2d 31, 37 (Tex. 1998). If the
movant establishes that limitations bars the action, the nonmovant must then adduce
summary judgment proof raising a fact issue to avoid limitations. KPMG Peat
Marwick, 988 S.W.2d at 748. 
B.      Analysis of Whether Limitations had Expired
          In Interfirst Bank-Houston, N.A. v. Quintana Petroleum Corporation, we
explained, 
It is only when the trustee cannot or will not enforce the cause of action
that he has against the third person that the beneficiary is allowed to
enforce it. In such a case, the beneficiary is not acting on a cause of
action vested in him, but is acting for the trustee, and the period of the
statute of limitations should be computed from the time the trustee
acquired his right to sue. 

699 S.W.2d 864, 874 (Tex. App.—Houston [1st Dist.] 1985, writ ref’d n.r.e.).

          In this case, the Chapas asserted their claims against Wells Fargo and Lewis
for breach of fiduciary duty, breach of the duty of good faith and fair dealing,
negligent misrepresentation, negligence, fraud, and for statutory violations, as trust
beneficiaries on behalf of the trustee. See id. The parties agree that the limitations
periods for these claims began to run when Pena, as trustee, acquired his right to sue. 
See id. As a result, Wells Fargo and Lewis had to show that no genuine issue of
material fact exists regarding when Pena, not the Chapas, discovered, or in the
exercise of reasonable diligence should have discovered, the wrongful act and
resulting injury.


 See id. Indeed, all of the arguments and evidence offered by Wells
Fargo and Lewis related to Pena’s knowledge, not the Chapas’ knowledge.
          The Chapas allege that Lewis owed a fiduciary duty to Pena to correctly advise
him regarding suitable investments for the testamentary trust funds. The Chapas
allege that Lewis breached this duty when he directed Pena to engage in margin
trading and invest in high-risk technology mutual funds. 
          The Chapas correctly point out that when analyzing the applicability of the
discovery rule in cases in which the alleged injuries arise from a breach of fiduciary
duty, the claims are generally considered inherently undiscoverable. See S.V., 933
S.W.2d at 8; Computer Assocs. Int’l, Inc. v. Altai, Inc., 918 S.W.2d 453, 456 (Tex.
1996). Nonetheless, once the fiduciary’s misconduct becomes apparent, the claimant
cannot ignore it, regardless of the fiduciary nature of the relationship. See S.V., 933
S.W.2d at 8; see also Computer Assocs., 918 S.W.2d at 456. In other words, such
claims accrue when the claimant knows or in the exercise of ordinary diligence
should know of the wrongful act and resulting injury.


 See Murphy v. Campbell, 964
S.W.2d 265, 271 (Tex. 1997). The date that a claimant knew or should have known
of an injury is generally a fact question. See Childs, 974 S.W.2d at 44. However, if
reasonable minds could not differ about the conclusion to be drawn from the facts in
the record, the start of the limitations period may be determined as a matter of law. 
See id.
          Here, Wells Fargo and Lewis offered evidence to show that, on December 4,
2000, Pena knew, or should have known, the risky and “unsuitable” nature of the
subject investments and of the injury to the trust. To support summary judgment, the
movants offered the monthly and quarterly statements received by Pena from
December 1999 through January 2001. The statements show that from December 31,
1999 to November 30, 2000 the value of the brokerage account declined from
$653,214.87 to $433,202.86. In the month of November 2000, the account lost
$152,886.26. The statement dated December 29, 2000 indicates that account funds
were used to pay for losses sustained due to margin trading. 
          The movants offered Pena’s deposition testimony in which Pena admitted that
he was aware that the losses to the brokerage account resulted from the investments
in the technology mutual funds. Pena acknowledged that he decided to take the
brokerage account’s funds out of the technology sector investments in December
2000 because he knew that the account had sustained losses from the technology
investments. 
          The movants also offered the “Client Investment Replacement Authorization”
form signed by Pena on December 4, 2000. In the form, Pena directed that the
brokerage account’s funds “exit” from the technology mutual funds and be invested
in a “unit investment trust.” The hand-written notation on the form indicates that the
“reason for [the] change” was as follows: “Diversify from internet sector/technology
funds into UIT with greater diversification and less overall volatility.” 
          By the hand-written notation, the Client Investment Replacement Authorization
form indicates that Pena was aware that the technology investments were, as the
Chapas allege, not “suitable” investments for the trust fund’s assets because of their
volatility. Pena was also aware that the trust’s corpus had sustained substantial losses
caused by investment in the technology mutual funds. And he was aware that margin
trading was also depleting the trust fund’s assets.
          Pena’s awareness of these facts, at a minimum, would have caused a reasonably
prudent trustee to further inquire into Lewis’s conduct. Even assuming a fiduciary
relationship between Pena and Lewis, Pena could not simply sit back and ignore the
very facts that the Chapas now, acting on his behalf, claim afford them a judicial
remedy. 
          Based on the summary judgment proof offered, Wells Fargo and Lewis
conclusively established that Pena knew, or should have known of Lewis’s alleged
wrongdoing, and of the resulting injury, on December 4, 2000. See Murphy, 964
S.W.2d at 271; S.V., 933 S.W.2d at 8; Computer Assocs., 918 S.W.2d at 456; see also
Freuden v. Hibernia Nat. Bank, No. 09-08-00398-CV, 2009 WL 2045158, at *3 (Tex.
App.—Beaumont July 16, 2009, pet. denied) (mem. op.). This is true even when the
evidence is viewed in favor of the Chapas. Thus, Wells Fargo and Lewis
conclusively proved that the Chapas’ causes of action brought on behalf of Pena
accrued on December 4, 2000. 
          On appeal, the Chapas point to record evidence to show that, when viewed in
the light most favorable to them, a genuine issue of material fact exists regarding
when their causes of action accrued. The Chapas rely on Pena’s testimony that he did
not realize that the trust’s funds had not been suitably invested until December 2005,
when Pena consulted an attorney to respond to the Chapas’ demand for an accounting
of the trust. 
          The Chapas also point to evidence that Pena was inexperienced as a trustee and
as an investor. Pena testified that he told Lewis that he did not want to place the
trust’s funds in any risky investments. He stated that Lewis had assured him that the
funds would be not be put at risk. Pena testified that, when he questioned Lewis
regarding the losses in the account, Lewis reassured him that the investments were
suitable. In their brief, the Chapas point to testimony that Lewis had “crafted the
investment strategy specific for the Trust to achieve ‘preservation’ of the principal for
the benefit of the Chapas as beneficiaries, all the while knowing that Pena was relying
on his expert advice as a ‘certified financial planner.’” The Chapas also cite
testimony that, on one occasion, “Lewis made the decision to sell stock out of the
Trust account to reduce the amount of margin without seeking the approval of Pena
or even notifying him of such sale until after the fact.” 
          Here, the monthly account statements, coupled with the Client Investment
Replacement Authorization, shows that, on December 4, 2000, Pena had an
affirmative awareness of the losses sustained by the trust’s assets and of the cause of
that loss. When viewed in their favor, the evidence cited by the Chapas may raise a
fact issue regarding whether Pena knew, or should have known, of the alleged
unsuitable nature of the investments before December 4, 2000, given the claimed
fiduciary relationship between Lewis and Pena. The evidence cited by the Chapas
may also be relevant to the underlying merits of their claims. But, such evidence does
not raise a genuine issue of material fact regarding whether Pena knew, or should
have known, of Lewis’s alleged wrongdoing and of the resulting injury on December
4, 2000. 
          Viewing the evidence in the light most favorable to the Chapas, Wells Fargo
and Lewis established that Pena knew, or should have known, of Lewis’s alleged
wrongdoing and of the resulting injury on December 4, 2000. See Murphy, 964
S.W.2d at 271; S.V., 933 S.W.2d at 8; Computer Assocs., 918 S.W.2d at 456. 
Accordingly, Wells Fargo and Lewis conclusively proved that the Chapas’ causes of
action brought on behalf of Pena accrued on December 4, 2000. 
          It is undisputed that the Chapas’ causes of action have statutes of limitations
ranging from two years to four years. The Chapas did not file suit until August 17,
2006. Therefore, we conclude that the Chapas’ claims against Wells Fargo and
Lewis, asserted by them on behalf of Pena, for breach of fiduciary duty, breach of the
duty of good faith and fair dealing, negligent misrepresentation, negligence, fraud,
and violating the Deceptive Trade Practices Act and the Texas Securities Act were
barred by limitations when the suit was filed. 
C.      Civil Practices and Remedies Code Section 33.004
          In support of their first two issues challenging summary judgment, the Chapas 
also contend that Civil Practices and Remedies Code section 33.004 permits them to
pursue their claims against Lewis and Wells Fargo, regardless of whether those
claims were time-barred at the time suit was initially filed. Section 33.004 is part of
Chapter 33, the statutory scheme for the apportionment of responsibility in tort and
deceptive trade practices actions. See Tex. Civ. Prac. Rem. Code Ann.
§§ 33.001–.017 (Vernon 2008).
          Section 33.004 provides, in relevant part,
(a) A defendant may seek to designate a person as a responsible third
party by filing a motion for leave to designate that person as a
responsible third party. The motion must be filed on or before the 60th
day before the trial date unless the court finds good cause to allow the
motion to be filed at a later date.

          . . . .
 
(e) If a person is designated under this section as a responsible third
party, a claimant is not barred by limitations from seeking to join that
person, even though such joinder would otherwise be barred by
limitations, if the claimant seeks to join that person not later than 60
days after that person is designated as a responsible third party.
Tex. Civ. Prac. Rem. Code Ann. § 33.004(a),(e) (Vernon 2008).
          It is undisputed that, pursuant to section 33.004(e), the Chapas joined Lewis
within 60 days after he had been designated as a responsible third party by Pena. In
their motion for summary judgment, Wells Fargo and Lewis raised several grounds
to support their assertion that section 33.004(e) did not permit Lewis’s joinder.
          1.       Public Policy
          The movants first characterize Lewis’s joinder as “fraudulent.” They alleged
that the Chapas and Pena colluded to join Lewis after the Chapas realized that their
claims against Wells Fargo were time-barred. The movants argued that section
33.004(e)’s joinder provision should not apply when, as here, a plaintiff’s claims were
time-barred before suit was filed. Specifically, the movants asserted, 
[I]nterpreted logically, the apparent limitations savings clause [of
section 33.004(e)] should only operate to revive claims against later
joined responsible third parties in cases where the initial lawsuit was
timely filed. Any suggestion to the contrary, namely that limitations
may be revived as to claims which were barred on the date the lawsuit
was first filed, would essentially strip all defendants who are joined as
responsible third parties from any limitations defense, regardless of how
far back the conduct in question occurred. Taken to its end, this
argument would lead to absurd results and potential for collusion that
the legislature could not have possibly intended when they drafted
§ 33.004(e).
          The movants acknowledged that no case law supports their policy argument
and that “the legislative history does not shed any light on the limitations issue.”           Although the movants’ policy argument has certain common sense appeal, it
cannot serve to defeat the plain language of the statute, which permitted the joinder
of Lewis in this case. Last year, the San Antonio Court of Appeals rejected a similar
public policy argument in Flack v. Hanke, No. 04–08–00177–CV, 2009 WL 1464144
at *6 (Tex. App.—San Antonio 2009, no pet.). There, the designating defendant had
agreed to designate the appellees as responsible third parties in exchange for being
dismissed from the suit as part of a settlement agreement with the plaintiff. See id.
at *2. The appellees argued that their designation as responsible third parties should
be disallowed because such designation was an “attempt to manipulate the process”
and to circumvent their statutory limitations defense. Id. at *6. The court of appeals
acknowledged that the appellees were likely designated as responsible third parties
solely to “wash out” the appellees’ limitations defense.


 Id. at *6. Nonetheless, the
San Antonio court of appeals rejected the appellees’ policy argument, explaining,
“[T]he statute does not specifically preclude such designations based on the intent of
the designor.” Id. 
          We must construe section 33.004(e) according to its plain language and may
not add language that is not implicitly contained in the language of the statute. See
Lee v. City of Houston, 807 S.W.2d 290, 295 (Tex. 1991). Here, we can ascertain no
legislative intent from the statutory scheme that the legislature meant to preclude the
joinder of a responsible third party, which had a valid limitations defense when the
suit was filed. See Tex. Civ. Prac. Rem. Code Ann. § 33.004(e); see also Tex. Civ.
Prac. Rem. Code Ann. § 33.002 (defining applicability of Chapter 33, including
listing types of claims to which chapter does not apply). Rather, the provision’s plain
language expressly allows, for a limited period, the revival of claims that were
previously time-barred. See Tex. Civ. Prac. Rem. Code Ann. § 33.004(e).
          We further note that our function is not to question the wisdom of the statute
or measure it for logic; we are to apply the statute as written, unless the context or an
absurd result requires a different construction. See City of Rockwall v. Hughes, 246
S.W.3d 621, 629 (Tex. 2008); Lee, 807 S.W.2d at 293. Wells Fargo and Lewis
argued in their summary judgment motion that allowing Lewis’s joinder leads to such
an absurd result. To illustrate their point, they offered the following example and
argument:
Plaintiff (P) files suit in January 2008 against D1, an individual driving
alone, and D2, a moving company, for negligence stemming from a May
1997 three-car automobile accident. P’s claims against D1 and D2 are
clearly barred by the two-year negligence statute of limitations. D1, the
individual, files a motion to designate T, the employee driver of D2’s
moving company vehicle, as a responsible third party. P then joins T as
a defendant pursuant to 33.004(e), even though over 10 years have
passed since the accident, and any claims against T are clearly time-barred. By the Chapa Plaintiffs’ logic, the claims against T should
survive pursuant to the savings clause of 33.004(e), even though the
initial suit by P was not timely filed. Thus, P would be able to revive a
completely dead case and pursue his 10-year-old claims against T. 
Clearly this was not the intent of the legislature in drafting 33.004.
          Again, Wells Fargo and Lewis provide a compelling argument. Nonetheless,
the underlying facts of this case are unlike those in the movants’ example. Here, no
allegation or proof has been offered to show that the Chapas’ claims against Pena, the
defendant who designated Lewis as a responsible third party, were time-barred when
suit was initially filed. To the contrary, it appears accepted by the partes that the
Chapas’ claims against Pena were timely. In contrast, the defendant, D1, in the
movants’ example, who designated T as a responsible third party, had a valid
limitations defense when suit was filed. 
          The distinction does have significance. Here, the case is not “completely
dead,” as the movants characterized the claims in their example. The Chapas had a
“live” claim against Pena when they filed suit. Under the statutory scheme of Chapter
33, Pena had the right to designate Lewis as a responsible third party to apportion
responsibility. See Tex. Civ. Prac. Rem. Code Ann. § 33.004(a). 
          The legislature has chosen to permit a defendant to designate a responsible
third party, regardless of whether that party has a valid limitations defense. See Tex.
Civ. Prac. Rem. Code Ann. § 33.011(6) (Vernon 2008) (broadly defining
“responsible third party”). In turn, the legislature balanced out the rights of a
claimant, such as the Chapas, by giving the claimant a 60-day window to join a
responsible third party, regardless of whether that party has a valid limitations
defense. See Tex. Civ. Prac. Rem. Code Ann. § 33.004(e); see also Kimbrell v.
Molinet, 288 S.W.3d 464, 470 (Tex. App.—San Antonio 2009, pet. filed) (Simmons,
J., concurring) (discussing legislative history of Chapter 33 and balancing of parties’
rights under statutory scheme). In short, we conclude the movants’ policy argument
is without merit and did not prevent Lewis’s joinder by the Chapas. 
          2.       Claims with Two-Year Limitations Period
          In their motion for summary judgment, Wells Fargo and Lewis also asserted
that section 33.004(e) did not apply to the Chapas’ claims governed by two-year
statutes of limitations. The movants pointed out, “The amendments to Chapter 33,
including § 33.004(e), became effective September 1, 2003.”  See Act of June 2,
2003, 78th Leg., R.S., ch. 204, § 23.02, 2003 Tex. Gen. Laws 847, 898–99. The 2003
version governs all cases filed on or after July 1, 2003. See Act of June 2, 2003, 78th
Leg., R.S., ch. 204, § 23.02(c), 2003 Tex. Gen. Laws 847, 899.
          Wells Fargo and Lewis further asserted, “It is well-settled that a new
limitations statutory scheme cannot revive claims on which limitations had expired
prior to enactment of the new statute.” They averred, “In the instant case, the
[Chapas’] claims with a two-year statute of limitations had already expired by
September 1, 2003.” 
          It is undisputed that the following claims asserted by the Chapas against Lewis
had a two-year statute of limitations: breach of the duty of good faith and fair dealing,
negligent misrepresentation, negligence, and DTPA violations.


 The movants
asserted that, because these claims were time-barred when the 2003 amendments to
Chapter 33 were enacted, the Chapas could not assert these causes of action against
Lewis when they joined him pursuant to section 33.004(e). We agree.
          In Baker Hughes, Inc. v. Keco R. & D., Inc., the Texas supreme court
reaffirmed “settled law” that, “after a cause has become barred by the statute of
limitation, the defendant has a vested right to rely on such statute as a defense.” 12
S.W.3d 1, 4 (Tex. 1999) (citing Wilson v. Work, 62 S.W.2d 490, 490 (Tex. 1933);
Cathey v. Weaver, 242 S.W. 447, 453 (Tex. 1922); Mellinger v. City of Houston, 3
S.W. 249, 255 (Tex. 1887)). The court continued, “To permit barred claims to be
revived years later would undermine society’s interest in repose, which is one of the
principal justifications for statutes of limitations.” Id. The court explained, “[W]e
have written that a statute extending the limitations period of a claim already barred
by limitations violates the Texas Constitution’s prohibition against retroactive laws,
which is article I, section 16.” Id. 
          Here, the Chapas’ claims against Lewis for breach of the duty of good faith and
fair dealing, negligent misrepresentation, negligence, and DTPA violations accrued,
as discussed above, on December 4, 2000. When the legislature enacted the 2003
amendments to Chapter 33, including section 33.004(e), these claims were already
time-barred. At the time of 33.004(e)’s enactment, Lewis had a vested right to rely
on the statutes of limitation barring these claims. See id. Reading section 33.004(e)
to divest Lewis of that right violates article I, section 16 of the Texas Constitution. 
See id. Accordingly, the Chapas’ time-barred claims for breach of the duty of good
faith and fair dealing, negligent misrepresentation, negligence, and DTPA violations
may not, as a matter of law, be revived against Lewis pursuant to section 33.004(e). 
See id.; see also Mann v. Jack Roach Bissonet, Inc., 623 S.W.2d 716, 718–19 (Tex.
Civ. App.—Houston [1st Dist.] 1981, no writ) (holding that legislature cannot extend
limitations period for claims that are already time-barred). 
          3.       Statutory Claims
          Civil Practice and Remedies Code section 33.002(a) provides that Chapter 33
applies to
(1) any cause of action based on tort in which a defendant, settling
person, or responsible third party is found responsible for a percentage
of the harm for which relief is sought; or 
 
(2) any action brought under the Deceptive Trade Practices-Consumer
Protection Act (Subchapter E, Chapter 17, Business & Commerce Code)
in which a defendant, settling person, or responsible third party is found
responsible for a percentage of the harm for which relief is sought. 
Tex. Civ. Prac. Rem. Code Ann. § 33.002(a) (Vernon 2008). The movants argued
thatt Chapter 33 does not apply to the Chapas’ statutory claims asserted under the
Texas Securities Act and the Texas Trust Act.


 The movants’ assertions are not
supported by the weight of authority. 
          Article 33.002(a) provides that Chapter 33 applies to “any action based in tort.”
Tex. Civ. Prac. Rem. Code Ann. § 33.002(a) (emphasis added). The Texas supreme
court has applied Chapter 33 to statutory tort claims that do not include a separate and
conflicting legislative fault allocation scheme.


 Compare JCW Elecs., Inc. v. Garza,
257 S.W.3d 701, 705–06 (Tex. 2008) (holding that Chapter 33 applied to UCC article
2 claims) with Sw. Bank v. Info. Support Concepts, Inc., 149 S.W.3d 104, 111 (Tex.
2004) (declining to apply Chapter 33 to UCC article 3 conversion claims because
article 3 contains “its own loss allocation scheme uniquely applicable to conversion
claims involving negotiable instruments”); see also Werner v. KPMG, L.L.P., 415 F.
Supp.2d 688, 703 (S.D. Tex. 2006). 
          Here, the movants made no assertion in their motion for summary judgment
that the Chapas’ statutory claims are not “based in tort.” Nor is there any argument
that the subject statutes contained a separate and conflicting legislative fault
allocation scheme. Accordingly, we conclude that section 33.004(e) applied to the
Chapas’ statutory claims asserted against Lewis. See JCW Elecs., 257 S.W.3d at
705–06. 
 
          4.       Respondeat Superior
          In the trial court and on appeal, the Chapas contend that, to the extent that
section 33.004(e) applies to Lewis, it also applies to Wells Fargo, based on
respondeat superior.


 As a result, the Chapas contend that Wells Fargo remains a
defendant in the lawsuit, regardless of whether it has a valid limitations defense. 
          In their opening brief, the Chapas contend that “the doctrine of respondeat
superior clearly and most logically applies to the context of Section 33.004(e).” They
argue, “Permitting a claim against an employer based on vicarious liability should be
revived if the claim against the employee is revived as well.” The Chapas do not cite,
nor can we locate, any authority determining this issue. Nor does Chapter 33
generally, or section 33.004(e) specifically, address the interplay between the
proportionate liability scheme and claims based on theories of vicarious liability. See
generally Fid. & Guar. Ins. Underwriters Inc. v. Wells Fargo Bank, No. H-04-2833,
2006 WL 870683, at *5 (S.D. Tex. Mar. 31, 2006) (noting that “courts and
commentators alike have recognized the difficulty in reconciling the language of the
Proportionate Responsibility Statute with certain causes of actions, including
vicarious and/or derivative liability actions”); D. Underwood & Michael D. Morrison,
Apportioning Responsibility in Cases Involving Claims of Vicarious Derivative, or
Statutory Liability for Harm Directly Caused by the Conduct of Another, 55 Baylor
L. Rev. 617, 647–48 (2003) (writing that the legislature, in enacting the original and
present versions of section 33.003, did not consider derivative or vicarious liability
cases). 
          As noted by the El Paso Court of Appeals, “The purpose of Chapter 33 . . . is
to apportion the damages for which joint tortfeasors are liable, according to the
percentage of fault.” Gilcrease v. Garlock, Inc., 211 S.W.3d 448, 457 (Tex.
App.—El Paso 2006, no pet.); see also Tex. Civ. Prac. Rem. Code Ann. § 33.003
(directing that jury apportions responsibility among only those persons whose
conduct caused or contributed to cause harm on which damages sought). Pursuant
to the doctrine of respondeat superior, an employer will be held vicariously liable for
the negligence of its employee regardless of any allegation of fault on the part of the
employer. See Bedford v. Moore, 166 S.W.3d 454, 461 (Tex. App.—Fort Worth
2005, no pet.). Allowing a plaintiff to use section 33.004(e) to revive a time-barred
claim against a party, not for its tortious conduct, but merely based on its relationship
with a tortfeasor, is incongruent with Chapter 33’s statutory scheme to apportion
responsibility based on the person’s harm-causing conduct. Cf. Rosell v. Cent. W.
Motor Stages, Inc., 89 S.W.3d 643, 656–57 (Tex. App.—Dallas 2002, pet. denied)
(explaining that, “while the statute on its face requires all defendants to be included
in the apportionment question, it would not be proper for an employer to be included
along with the driver if its only responsibility was that of respondeat superior”). 
          Moreover, section 33.004(e) permits a claimant to join a designated
“responsible third party.” Under § 33.011(6), a “responsible third party” 
means [in pertinent part] any person who is alleged to have caused or
contributed to causing in any way the harm for which recovery of
damages is sought, whether by negligent act or omission, by any
defective or unreasonably dangerous product, by other conduct or
activity that violates an applicable legal standard, or by any combination
of these.
Tex. Civ. Prac. Rem. Code Ann. § 33.011(6). A party that is liable based purely on
respondeat superior does not fit this definition. The definition further underscores
that section 33.004(e) should not be used to hold a party liable when no allegations
have been made that the party caused or contributed to the claimant’s damages. 
Accordingly, we conclude that the Chapas’ time-barred claims against Wells Fargo
based on respondeat superior are not revived by section 33.004(e).
No Evidence Motion for Summary Judgment 
          In their third issue, the Chapas contend that summary judgment cannot be
based on Lewis’s and Wells Fargo’s no-evidence motion for summary judgment. The
movants filed a no-evidence motion for summary judgment with respect to the
Chapas’ claim that Lewis and Wells Fargo assisted Pena in his breaching his fiduciary
duty to the Chapas.


 
          “When a third party knowingly participates in the breach of a fiduciary duty,
the third party becomes a joint tortfeasor and is liable as such.” Kastner v. Jenkens
& Gilchrist, P.C., 231 S.W.3d 571, 580 (Tex. App.—Dallas 2007, no pet.). In their
fourth amended petition, the Chapas asserted a breach of fiduciary duty claim against
Pena, individually, and against Wells Fargo and Lewis as joint tortfeasors. The
Chapas claimed that Wells Fargo and Lewis, as third parties, knew that Pena was
committing a breach of his fiduciary duty. They alleged that Wells Fargo and Lewis
knowingly participated in Pena’s breach. The Chapas further alleged that Wells
Fargo and Lewis became joint tortfeasors with Pena. They asserted that, as a result,
Wells Fargo and Lewis are liable for participating in Pena’s breach of trust. See
Kinzbach Tool Co. v. Corbett-Wallace Corp., 160 S.W.2d 509, 514 (Tex. 1942);
Denson v. Dallas County Credit Union, 262 S.W.3d 846, 851 (Tex. App.—Dallas
2008, no pet.).
          In their no-evidence summary judgment motion, Wells Fargo and Lewis
alleged that there is no evidence that their conduct, separate from Pena’s conduct,
breached a duty to the Chapas. In so doing, the movants misinterpreted the Chapas’
cause of action. With regard to their assisting-in-breach-of-fiduciary-duty claim, the
Chapas do not allege that Wells Fargo and Lewis breached a duty that they owed to
the Chapas. Rather, they allege that Wells Fargo and Lewis knowingly assisted Pena
in breaching his fiduciary duty to the Chapas. Indeed, to succeed on their assisting-in-breach-of-fiduciary-duty claim, the Chapas need not show that Wells Fargo and
Lewis owed them a fiduciary duty or that Wells Fargo’s and Lewis’s conduct
breached such a duty. See Denson, 262 S.W.3d at 851. 
          In a no-evidence motion for summary judgment, the movant must state the
elements as to which there is no evidence for a claim. Tex. R. Civ. P. 166a(i);
Roventini v. Ocular Sciences, Inc., 111 S.W.3d 719, 722 (Tex. App.—Houston [1st
Dist.] 2003, no pet.) (noting that “motion must specify which essential elements of
the opponent’s claim or defense lack supporting evidence”). Here, the only element
identified by the movants as entitling them to summary judgment is not an element
of the Chapas’ assisting-in-breach-of-fiduciary-duty claim, as pleaded.


 Accordingly,
summary judgment cannot be properly granted on the movants’ no-evidence summary
judgment motion. See Denson, 262 S.W.3d at 851 (concluding that no-evidence
summary judgment erroneously granted on assisting-in-breach-of-fiduciary-duty
claim because movant mischaracterized duty element of claim).
Conclusion
          Based on the record and the foregoing analysis, we summarize our conclusions
as follows:
•        The Chapas’ claims against Wells Fargo and Lewis, asserted on behalf of Pena,
accrued on December 4, 2000. 
 
•        The Chapas’ claims against Wells Fargo and Lewis, asserted on behalf of Pena,
were time-barred when suit was filed. 
 
•        The Chapas’ claims against Lewis for breach of fiduciary duty, fraud, and
violating the Texas Securities Act were revived by Civil Practices and
Remedies Code section 33.004(e).
 
•        Because they were time-barred when the statute was enacted, the Chapas’
claims against Lewis for breach of the duty of good faith and fair dealing,
negligent misrepresentation, negligence, and DTPA violations, which have
two-year statutes of limitations, are not revived by section 33.004(e).
 
•        The Chapas’ claims against Wells Fargo, based on respondeat superior, are not
revived by section 33.004(e).
 
•        The Chapas’ claims against Wells Fargo and Lewis for assisting Pena in
breaching his fiduciary duty are not time-barred, and the no-evidence motion
for summary judgment on this claim should not have been granted.
•        The trial court properly granted summary judgment based on limitations with
regard to the Chapas’ claims against Wells Fargo for breach of fiduciary duty,
fraud, breach of the duty of good faith and fair dealing, negligent
misrepresentation, negligence, and violating the DTPA and the Texas
Securities Act.
 
•        The trial court did not properly grant summary judgment with regard to the
Chapas’ claim against Wells Fargo for assisting Pena in the breach of his
fiduciary duty.
 
•        The trial court properly granted summary judgment based on limitations with
regard to the Chapas’ claims against Lewis for breach of the duty of good faith
and fair dealing, negligent misrepresentation, negligence, and DTPA
violations.
 
•        The trial court did not properly grant summary judgment with regard to the
Chapas’ claims against Lewis for breach of fiduciary duty, fraud, violating the
Texas Securities Act, and assisting Pena in the breach of his fiduciary duty.

          Accordingly, we affirm the judgment of the trial court to the extent that it
grants summary judgment on the Chapas’ claims against Wells Fargo for breach of
fiduciary duty, fraud, breach of the duty of good faith and fair dealing, negligent
misrepresentation, negligence, and violating the DTPA and the Texas Securities Act. 
We also affirm the judgment of the trial court to the extent that it grants summary
judgment on the Chapas’ claims against Lewis for breach of the duty of good faith
and fair dealing, negligent misrepresentation, negligence, and DTPA violations.
          We reverse the judgment of the trial court to the extent that it grants summary
judgment on the Chapas’ claims against Wells Fargo for assisting Pena in breaching
his fiduciary duty. We also reverse the judgment of the trial court to the extent that
it grants summary judgment on the Chapas’ claims against Lewis for breach of
fiduciary duty, fraud, violating the Texas Securities Act, and assisting Pena in
breaching his fiduciary. We remand the case for further proceedings. 




                                                             Laura Carter Higley
                                                             Justice

Panel consists of Chief Justice Radack and Justices Alcala and Higley.